## 26319. BLACK *v.* THE STATE.

DECIDED SEPTEMBER 9, 1937.

*E. J. Summerour,* for plaintiff in error.

*J. H. Paschall, solicitor-general, J. R. Whitaker, J. M. Neel,* contra.

GUERRY, J. Roscoe Huskins and Horace Monday were jointly indicted for larceny from the house, it being alleged in the indictment that they carried away from a clubhouse or hotel of White Manganese Corporation, with intent to steal the same, certain articles of silverware, dishes, linen, cooking utensils, and other articles of personal property, of the value of $150. To this indictment Huskins and Monday entered pleas of guilty. Thereupon the defendant was indicted for receiving part of said stolen property, knowing that it was stolen. It was alleged that the total value of the property so received was $100. The jury found the defendant guilty, and fixed his punishment at one year. He brings exceptions to the overruling of his motion for new trial.

It appeared from the evidence that the principal thieves were boys eighteen and nineteen years old; that one of them was

a brother-in-law of the defendant; that they lived in the same neighborhood with the defendant; that each of them had the reputation of being thieves, and one of them had been arrested for stealing, a short time before. The same morning the theft was discovered, the principal thieves were seen by officers coming away from the home of the defendant, and they chased them around the home of the defendant that morning and captured them two days later. When first arrested they told the officers that Black had known all about the stealing, and had really persuaded them to get the second load of goods which he received. However, upon the trial they denied this, and appeared as witnesses for the defendant. It further appeared from the evidence that among other articles the defendant received certain towels which had the name of the prosecutor embroidered thereon with red thread. The principal thieves testified that they found the defendant at a dance near the scene of the theft, about nine o'clock at night, and that he went down the road with them and received the first lot of stolen articles within about 100 yards of the hotel from which they were stolen; that defendant returned to the dance and about midnight again went with them and received another lot of the stolen goods at his home; that they turned over to him approximately the following articles: 40 bath towels, 23 sheets, 4 blankets, 1 griddle, 3 frying-pans, 1 waffle-iron, 1 strainer, 1 juice-extractor, 1 potato-peeler, 1 potato-slicer, 1 potato-masher, 4 aluminum waiters, 1 shaker, 11 plates, 13 saucers, 1 muffin-pan, 8 bedspreads, 1 aluminum stewer, 12 cups, 1 biscuit-pan, 1 aluminum coffee-pot, 2 dishpans, 2 enameled double boilers, 1 gravy-bowl, 1 cream-pitcher, 18 silver-plated ice-tea spoons, 12 silver-plated coffee spoons, 12 silver-plated table knives, 12 silver-plated table-forks, 12 large size silver-plated spoons, 1 heavy aluminum tea kettle; also kitchen knives, forks, and spoons, and kitchen utensils, the exact number and kind of each being unknown; and enameled, crockery, and aluminum bowls, the exact number and size being unknown. It further appeared that for the first lot defendant paid $2.50, and for the second merely promised to fix it up the next day. When the officers first went to the defendant's place, he turned over a small quantity and said that that was all he had received. Several days later the officers went back with a search warrant and found an additional quantity of the stolen property.

The officers still later found that just about daylight on Wednesday morning (he having received the goods about six hours before) he carried a part of the goods to the home of Jim Ray and traded them to him for a gallon of whisky. After the defendant's connection with the theft was discovered, he returned to Jim Ray's and asked him to get these goods "in the clear." There can be no great doubt in our minds that the above evidence amply supports the verdict. That the goods received were stolen was admitted; that the defendant, as a person of reasonable intelligence, under the circumstances, must have known that the property was stolen, seems equally clear.

Exceptions are taken to the following instruction to the jury: "I charge you that if the goods that the boys stole, part of which were sold to Bart Black, if they were stolen, or received by him, as charged, if they were worth fifty dollars or more, then on so receiving them the defendant, if he received them as charged, would be guilty of a felony. If the goods stolen by the boys were worth less than fifty dollars, then it would be a misdemeanor." It is the defendant's contention that whether or not one is guilty of a felony in receiving stolen goods, knowing them to be stolen, should be measured by the value of the goods received or the value of the goods known to have been the subject of the larceny. In his brief, counsel for the defendant states that "under such a charge if A steals property of a total value of $1000, and B buys an article worth $1, knowing such article to be stolen, but having no knowledge of the theft of the other property of a value of $999, nevertheless he could be found guilty of a felony." We agree with the interpretation placed on the charge by counsel, but can not agree that as such it is an incorrect statement of the law. The Code, § 26-2620, in defining the offense in question and fixing the punishment, declares that any person buying or receiving stolen goods knowing them to be stolen "shall be an accessory after the fact, and shall receive the same punishment as would be inflicted on the person convicted of having stolen or feloniously taken the property." "An accessory after the fact is a person who, after full knowledge that a crime has been committed, conceals it, and harbors, assists, or protects the person charged with or convicted of the crime." Code, § 26-604. In discussing § 26-2620 Bleckley, J., said: "This may mean that the sentence of

the principal, in case of his conviction, shall be the exact measure of that pronounced upon the accessory, but the better construction probably is, that the latter shall not exceed what the former might have been if the court had seen proper to inflict the maximum of the law." *Anderson* v. *State,* 63 *Ga.* 675. In *Licette* v. *State,* 75 *Ga.* 253, it was said: "If the principal took the goods with felonious intent, and was guilty of felony, and would have suffered the punishment of a felon upon conviction, the party who received them, knowing them to be stolen, whether he is apprised of the intent or circumstances with which they were originally taken or not, is liable to the same punishment as the principal; if he knew that the goods were stolen, this would seem to be sufficient to fix his guilt and ascertain his punishment." The essential element of the offense charged against the defendant is not the same as that of the principal thieves; theirs is the stealing of the goods, his is the receiving such goods, or any part thereof, knowing them to be stolen. The theory of the offense of receiving stolen goods is that the defendant thereby harbors, conceals, or assists the principal in the theft—retarding discovery of the offender and defeating the ends of the criminal law. This the defendant does, whether he receives a part or all of the stolen property, or in receiving a part, whether he knew that other property was stolen at the same time. Thus, the value of the property received by defendant, or the value of the property known by him to have been stolen, is not an essential element of the crime of receiving stolen goods, and can not have any effect on the punishment to be inflicted on him. This ruling covers all of the special assignments of error urged in the brief of counsel for the defendant. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*